# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 15-20461

_____

United States Court of Appeals
Fifth Circuit

**FILED**

August 12, 2016

Lyle W. Cayce
Clerk

SYED NAIYER KHALIL; SAMINA KHALIL; SYED UMAR KHALIL; SYED HAMZA KHALIL; HERA KHALIL; HAFSA SIDRA KHALIL; SYED HASHIR KHALIL; SYED YASIR KHALIL,

Plaintiffs–Appellants,

v.

MARK J. HAZUDA, Director of the United States Citizenship and Immigration Services Nebraska Service Center, in his official capacity; LEON RODRIGUEZ, Director, United States Citizenship and Immigration Services, in his official capacity; JEH CHARLES JOHNSON, SECRETARY, DEPARTMENT OF HOMELAND SECURITY, in his official capacity; JOHN F. KERRY, Secretary of State, in his official capacity; THOMAS J. VAJDA, Consul General of the Consular Section of the Consulate of the United States, in his official capacity, Mumbai, India; HELEN LAFAVE, Consul General of the Consular Section of the Consulate of the United States, Kolkata, India, in her official capacity; EDWARD RAMOTOWSKI, Deputy Assistant Secretary of Visa Services, in his official capacity,

Defendants–Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-2483

_____

No. 15-20461

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

After U.S. Citizenship and Immigration Services (USCIS) revoked Syed Naiyer Khalil's I-140 immigrant visa petition (I-140 petition) because Khalil's petitioning employer no longer had a position for him, Khalil challenged the revocation in federal district court.  The Government argued, and the district court agreed, that judicial review was barred by a provision of the Immigration and Nationality Act (INA) prohibiting review of discretionary USCIS decisions.[1]   Khalil appeals the district court's dismissal for lack of subject-matter jurisdiction.  We affirm.

**I**

Syed Naiyer Khalil is a citizen of India who lived and worked in the United States on an H1-B visa.  An H1-B visa is a nonimmigrant visa that allows certain foreign nationals in "specialty occupation[s]" to reside and work temporarily in the United States for up to six years.[2]   Some H1-B workers remain in the United States indefinitely after lawfully adjusting to permanent resident status, usually based on a family- or employment-based immigrant visa petition filed on their behalf by a U.S.-citizen relative or a qualifying employer.  Applications to adjust status in this manner are processed and adjudicated by USCIS, a component of the Department of Homeland Security (DHS).

Khalil was working in the United States for Herbal Pharma, Inc. (Herbal Pharma) as a temporary worker in H1-B status.  In June 2006, Herbal Pharma

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 8 U.S.C. § 1252(a)(2)(B)(ii).

[2] *See* 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1184(g)(4), 1184(i).

No. 15-20461

filed a Form I-140 Immigrant Petition for Alien Worker (I-140 petition) on Khalil's behalf. That petition, once it was approved in October 2006, allowed Khalil to apply for an adjustment to permanent resident status when a visa number became available.[3] Khalil submitted such an application to USCIS in July 2007. He continued working for Herbal Pharma while his application to adjust status was pending. Although his authorization to live and work in the United States expired in September or October 2009, he unlawfully worked for Herbal Pharma until sometime in 2012.

USCIS denied Khalil's application to adjust status in October 2011. In support of its decision, the agency cited his unauthorized employment from October 2009 to January 2011 and correctly noted that the INA prohibited adjustment of status when the applicant "engaged in unauthorized employment" for 180 days or more before the application was adjudicated.

Nevertheless, Khalil's employer arranged for his I-140 petition to be transferred from USCIS to the U.S. consulate in Mumbai so that Khalil could apply for an immigrant visa there.[4] After visa interviews in April 2012 and October 2013, officers at the U.S. consulate provisionally declined to issue Khalil an immigrant visa pending further review and investigation.[5] During the second interview, Khalil candidly acknowledged that he no longer had an offer of employment from Herbal Pharma and presented instead a similar offer from Chemquest International. The consular officer, apparently concluding that the I-140 petition underlying Khalil's application was invalid for lack of

---

[3] Employment-based immigrant visas are subject to an annual quota, and an adjustment of status—like the issuance of an immigrant visa abroad by a U.S. embassy or consulate—counts against that quota. *See* 8 U.S.C. §§ 1151(a), 1151(c), 1153(b).

[4] Although Khalil's unauthorized employment made him ineligible to adjust status, *see* 8 U.S.C. § 1255(k)(2)(B), it did not bar him from obtaining an immigrant visa, *see id.* § 1182(a) (listing grounds for visa ineligibility).

[5] *See* 8 U.S.C. § 1201(g).

No. 15-20461

an available position at the petitioning employer, returned the I-140 petition to USCIS for possible revocation in November 2013.

In February 2014, USCIS sent Khalil notice that it intended to revoke his I-140 petition. During Khalil's consular interview, the notice charged, he "stated that he no longer had qualifying employment with the petitioner in the United States." Without citation to authority, the notice concluded that "[i]n view of the above, it appears that the approval of the petition should be revoked." Khalil timely responded, contending that 8 U.S.C. § 1154(j), reflecting a 2000 amendment to the INA, precluded the revocation of Khalil's I-140 petition due to a change in sponsoring employer. USCIS revoked Khalil's petition in March 2014 for substantially the same reason cited in the notice, without addressing his argument concerning § 1154(j). The decision reads, in relevant part, as follows: "The evidence of record indicates that the petitioned position is no longer offered to the alien beneficiary. In view of the above, the approval of the instant petition is revoked." The Government contends, and Khalil has not disputed, that Khalil did not appeal the revocation to DHS's Administrative Appeals Office.

Khalil and his family members brought this suit against various federal government officials, all in their official capacities, in 2014.[6] He alleged that consular officers refused to issue a visa, and USCIS revoked his petition, in violation of the INA, the Administrative Procedure Act, the Due Process Clause of the U.S. Constitution, and various DHS and Department of State guidance documents. The Government moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, arguing

---

[6] The additional plaintiffs are Khalil's wife and children; the complaint alleges that they suffered various harms as a result of the revocation of the visa petition in Khalil's favor, but the plaintiffs do not press these claims on appeal. The defendants are various DHS and Department of State officials. We refer to the defendants collectively as the Government.

4

that the revocation authority exercised by DHS was purely discretionary. As a result, it contended, the district court lacked jurisdiction over the case because 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review over such exercises of discretionary authority.

The district court agreed, dismissing Khalil's suit for lack of subject-matter jurisdiction. It noted that in this circuit, it is well settled that the revocation of immigrant visa petitions is a matter of discretion and judicial review of such decisions is therefore precluded by statute. It then rejected Khalil's argument that the 2000 amendment to the INA creates an exception to this general rule and deprives the Secretary of Homeland Security of discretion to revoke an I-140 due solely to a change in the applicant's sponsoring employer. After noting that the neither the INA nor the Administrative Procedure Act provides a separate cause of action, the district court dismissed Khalil's complaint without prejudice. Khalil timely appealed.

## II

A district court's dismissal for lack of subject-matter jurisdiction is reviewed de novo.[7] "[T]he district court 'has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'"[8]

The INA confers the authority to revoke immigrant visa petitions upon the Secretary of Homeland Security (the Secretary), who "may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any

---

[7] *Spotts v. United States*, 613 F.3d 559, 565 (5th Cir. 2010).

[8] *Id.* at 565-66 (quoting *St. Tammany Parish ex rel. Davis v. Fed. Emergency Mgmt. Agency,* 556 F.3d 307, 315 (5th Cir. 2009)).

petition approved by him under [8 U.S.C. § 1154]."[9]  The INA also precludes judicial review of certain decisions of the Secretary implicating his discretion. The Act provides that "[n]otwithstanding any other provision of law . . . no court shall have jurisdiction to review," among other things, "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."[10]

In this circuit, USCIS decisions to revoke immigrant visa petitions generally fall within the ambit of this jurisdiction-stripping provision of the INA and are thus not subject to judicial review.  Any argument to the contrary would be foreclosed by *Ghanem v. Upchurch*, which dismissed a challenge to the Secretary's revocation of the plaintiff's family-based visa petition on jurisdictional grounds.[11]  The statute governing revocations of immigrant visa petitions, we held in *Ghanem*, "vest[s] complete discretion in the Secretary to determine what constitutes good and sufficient cause" to revoke such petitions.[12]

Khalil's position rests on two arguments.  First, he says, a provision of the INA added in 2000 prohibits the revocation of an I-140 petition in cases like his.  Second, he adds, because that provision divests USCIS of discretion to revoke his I-140 petition, his case falls outside the scope of the

---

[9] 8 U.S.C. § 1155.

[10] *Id*. § 1252(a)(2)(B).  The statute includes an exception for asylum claims, which *are* subject to limited judicial review.  *Id.*

[11] 481 F.3d 222, 224-25 (5th Cir. 2007).  To our knowledge, all but one of the Courts of Appeals that have addressed this issue have reached the same conclusion.  *See Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 484 (1st Cir. 2016) (collecting cases), *cert. denied*, No. 15-1138, 2016 WL 1028786 (U.S. June 20, 2016).

[12] 481 F.3d at 225 (citing *Jilin Pharm. v. Chertoff*, 447 F.3d 196 (3d Cir. 2006); *El-Khader v. Monica*, 366 F.3d 562, 567 (7th Cir. 2004)).

jurisdiction-stripping provision of the INA and federal courts have subject-matter jurisdiction to review the dispute.

Khalil contends that USCIS's revocation of his I-140 petition contravened the portability provision of the INA, which was added by the American Competitiveness in the Twenty-First Century Act of 2000.[13]  As relevant here, the statute provides that "[a] petition . . . for an individual whose application for adjustment of status . . . has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers" if the new job is substantially similar to the old one.[14]   Khalil argues that because his application for adjustment of status "remained unadjudicated" for more than 180 days—even though the application had been denied by the time the petition was revoked—USCIS was without authority to revoke his I-140 petition due to a change in employment.  Although USCIS retained the authority to revoke his petition for fraud or other reasons, he argues, the portability provision's mandate that the petition "shall remain valid" with respect to new employment divested USCIS of any discretion to revoke a petition on the ground it relied upon in the administrative proceedings here.

We conclude that, contrary to Khalil's assertions, he cannot benefit from the application of the portability provision of § 1154(j), because his application for adjustment of status was no longer pending at the time USCIS revoked his

---

[13] Pub. L. No. 106-313, 114 Stat. 1251 (codified at 8 U.S.C. § 1154(j)).

[14] The full text of this provision refers to "[a] petition under subsection (a)(1)(D)" of § 1154.  At the time this provision was enacted, subsection (a)(1)(D) of § 1154 referred to the type of employment-based visa petition at issue here.  *See* 8 U.S.C. § 1154(a)(1)(D) (1994 & Supp. V 2000) (available at uscode.house.gov).   Subsection (a)(1)(D) was redesignated subsection (a)(1)(F) by the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 1503(d)(1), 114 Stat. 1464, 1521.  As a result, it appears the cross-reference should now be to subsection (a)(1)(F), although the present version of the U.S. Code maintains the text as originally enacted.  *See Herrera v. USCIS*, 571 F.3d 881, 886 n.5 (9th Cir. 2009).

I-140 petition. The portability provision, as its heading suggests, was enacted to provide "[j]ob flexibility for long delayed applicants for adjustment of status."[15] By its terms, it governs the validity of "[a] petition . . . for an individual whose application for adjustment of status . . . has been filed" if the individual "changes jobs or employers."[16] The statute's use of the present tense and perfect aspect here—referring to an application that "has been filed"—is most naturally understood in this context to encompass only those applications that remain unadjudicated.[17] Put differently, the statutory text creates two requirements: that the application for adjustment of status (1) "has been filed" and that it (2) has "remained unadjudicated for 180 days or more." As a result, the provision cannot benefit Khalil, whose application to adjust status had been denied well before his I-140 petition was revoked.

This inference from the statutory text is supported by an analysis of its companion provisions in the Twenty-First Century Act of 2000.[18] The portability provision at issue here is contained in § 106(c) of the Act. In § 106(a) and (b), the Act contains two other provisions that plainly apply only to nonimmigrants *currently in the United States* awaiting the adjudication of their I-140 petition or application to adjust status. Section 106(a) creates an exception to the six-year limitation on the duration of authorized stay for certain nonimmigrants already in H1-B status whose I-140 immigrant visa

---

[15] 8 U.S.C. § 1154(j).

[16] *Id.*

[17] For examples of § 1154(j) being applied in this context, see *Perez-Vargas v. Gonzales*, 478 F.3d 191, 192-93 (4th Cir. 2007) (noting that § 1154(j) "permits an application for adjustment of status to remain pending" in certain circumstances); *Sung v. Keisler*, 505 F.3d 372, 376 (5th Cir. 2007) (citing *Perez-Vargas* for the proposition that "based on the plain language of this statute," the provision "pertains to an adjustment of status application").

[18] Pub. L. No. 106-313, 114 Stat. 1251 (codified at 8 U.S.C. §1154(j)); *see United States v. Lawrence*, 727 F.3d 386, 391-92 (5th Cir. 2013) (noting that statutory provisions "necessarily derive[] meaning from the context provided by the surrounding provisions, as well as the broader context of the statute as a whole" (quoting *Khalid v. Holder,* 655 F.3d 363, 367 (5th Cir. 2011))).

petitions or applications to adjust status have been pending for 365 days or more. Section 106(b) requires USCIS to extend the period of authorized stay for such non-immigrants "in one-year increments until such time as a final decision is made on the alien's lawful permanent residence." Because the six-year limitation period implicated by § 106(a) and (b) only runs against those currently in the United States in H1-B status, those provisions have no effect on applicants seeking to enter the United States by obtaining an immigrant visa from a U.S. embassy or consulate. As the Senate report accompanying an earlier version of the bill indicated, § 106 was crafted to "allow[] an individual on an H-1B visa whose adjustment to permanent resident on the basis of employment has progressed far enough to stay in the United States until a final decision is made on his or her case."[19] Section 106(c) of the Act—although it was added after the committee report was written[20]— is a companion provision to § 106(a) and (b), designed to avoid situations in which "entirely unreasonable administrative delays" "forced" non-immigrant workers in H1-B status to disrupt their work and return to their home country.[21] There is simply no indication that any part of § 106, including the portability provision, reaches beyond current applicants for adjustment of status to encompass those opting instead to secure permanent resident status by obtaining an immigrant visa from a U.S. embassy or consulate.

---

[19] S. Rep. No. 106-260, at 23 (2000), https://www.congress.gov/106/crpt/srpt260/CRPT-106srpt260.pdf. At that stage, what became § 106 of the final enactment was designated § 6 in the version discussed by the committee report.

[20] *Compare* S. 2045, 106th Cong. § 6 (as reported by S. Comm. on the Judiciary, Apr. 11, 2000), https://www.gpo.gov/fdsys/pkg/BILLS-106s2045rs/pdf/BILLS-106s2045rs.pdf, *with* S. 2045, 106th Cong. § 106 (as enrolled, Oct. 3, 2000), https://www.gpo.gov/fdsys/pkg/BILLS-106s2045enr/pdf/BILLS-106s2045enr.pdf.

[21] S. Rep. No. 106-260, at 23.

No. 15-20461

We note that the result here does not depend on any deference to USCIS's interpretation of the statute. *Chevron* deference[22] is only warranted where "the agency [has] issued its interpretation in a manner that gives it the force of law."[23] Because we have declined to extend *Chevron* deference even to a non-precedential opinion of the Board of Immigration Appeals,[24] it certainly does not extend to the decision of a lone USCIS adjudicator. The fact that the Government has adopted this interpretation of § 1154(j) as a litigating position is of no moment.[25] As a result, the extent of our deference to the agency depends upon the "thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade."[26] The adjudicator's decision here, however, fails to address Khalil's argument regarding the proper interpretation of § 1154(j) and thus is entitled to no deference.[27]

In sum, we conclude that USCIS's revocation of Khalil's I-140 petition was not in violation of § 1154(j). As a result, we need not reach the question of whether § 1154(j), when it applies, creates an exception to this circuit's general

---

[22] *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

[23] *Dhuka v. Holder*, 716 F.3d 149, 155 (5th Cir. 2013).

[24] *Id.* at 156.

[25] *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-67 (2012) (deference not required where government's interpretation "is nothing more than a 'convenient litigating position' or a '*post hoc* rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack" (alteration in original) (citations omitted)).

[26] *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944).

[27] We note that USCIS has published a Federal Register notice proposing revisions to the Code of Federal Regulations implementing § 1154(j). *See* Retention of EB–1, EB–2, and EB–3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers, 80 Fed. Reg. 81,900, 81,915 (proposed Dec. 31, 2015) (describing § 1154(j) as "enhanc[ing] the ability of certain workers to change jobs or employers if they have been sponsored for permanent residence by U.S. employers and have pending applications for adjustment of status"); *id.* at 81,944 (setting out proposed 8 CFR § 245.25, which addresses the adjudication of adjustment of status applications in light of § 1154(j)). These revisions do not appear to address directly the applicability (or not) of § 1154(j) to individuals like Khalil whose petitions are under review for possible revocation outside the context of a currently pending application to adjust status.

rule that USCIS's petition revocation decisions are discretionary decisions not subject to judicial review.  Instead, the jurisdiction-stripping provision of the INA applies with full force to Khalil's case.  We therefore AFFIRM the district court's order dismissing the case for lack of subject-matter jurisdiction.