UNITED STATES of America, Plaintiff–Appellee

v.

Francesk SHKAMBI, also known as Cesk, Defendant–Appellant.

No. 14–40820.

United States Court of Appeals, Fifth Circuit.

Aug. 6, 2015.

Traci Lynne Kenner, Assistant U.S. Attorney, Heather Harris Rattan, Esq., Assistant U.S. Attorney, U.S. Attorney's Office, Tyler, TX, for Plaintiff–Appellee.

John Andrew Kuchera, Waco, TX, for Defendant–Appellant.

Francesk Shkambi, Terre Haute, IN, pro se.

Before KING, SMITH, and ELROD, Circuit Judges.

PER CURIAM: *

Defendant–Appellant Francesk Shkambi challenges on various grounds his conviction and sentence for conspiracy to possess with intent to distribute cocaine, heroin, marijuana, or Ecstasy. For the following reasons, we AFFIRM the judgment of the district court.

## I. Factual and Procedural Background

### A. Factual Background

At trial, the Government offered evidence against Defendant–Appellant Francesk Shkambi concerning a series of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

events—both in the United States and abroad—from 2005 to 2009.[1]

On October 2, 2005, Shkambi was pulled over by police while he was driving through New Jersey. Officers ultimately searched the car, finding $15,000 in cash secreted in the backseat. One of the officers noticed that the cash smelled like marijuana; this was confirmed by a trained canine. A later 2009 FBI search of Shkambi's residence in Detroit, Michigan, uncovered a camera in a crawlspace in the basement containing photographs of Shkambi and one of his co-defendants, as well as photographs—dated October 25, 2005—of distributable amounts of marijuana.

On September 11, 2006, the FBI conducted a search of the trash from Shkambi's Detroit residence. That search uncovered a folder with Shkambi's name on it containing records documenting approximately $80,000 in wire transfers made in Shkambi's name to Canada and Albania. That amount significantly exceeded the income Shkambi reported on his tax returns during that time period.

In the first half of 2007, Shkambi was intercepted on wiretaps related to drug investigations in Detroit and Chicago. During those calls, Shkambi spoke with several of his co-defendants, apparently using coded language to discuss trafficking in cocaine and marijuana.[2] In July 2007, Shkambi met with several of his co-defendants, including Besnik Lusha, in Frisco, Texas,[3] to discuss smuggling marijuana into Texas and obtaining sources of cocaine to take to Canada.

On February 25, 2008, Shkambi and Lusha sold three pounds of marijuana to a government informant, Jerry Jacinto, in Frisco. The following month, Shkambi and Lusha sold one pound of marijuana to Felix Ramirez, and another pound to co-defendant Diego Garcia. Also in March 2008, Shkambi asked Jacinto—whom he believed to be a drug dealer—to obtain 10 kilograms of cocaine for him; the two men negotiated the price. Shkambi, Lusha, and Jacinto met to discuss the details of the transaction. Later that day, Lusha and another co-defendant, Gjovalin Dokaj, traveled to the Oak Cliff area of Dallas to complete the transaction, but the deal never materialized (as Jacinto was a confidential informant). Also in March 2008, Jacinto asked Lusha if he had a source for Ecstasy. Lusha then asked Shkambi whether they could obtain 4,000 Ecstasy pills; Shkambi responded that they could, and that Lusha should ask Dokaj about procuring them in Canada.

In March and April 2008, Shkambi and Lusha arranged to purchase cocaine from Garcia—who had a source for the drug—to smuggle north to Canada. Shkambi, Lusha, and Garcia negotiated the transaction from March 19 through April 3. They discussed placing the drugs into Shkambi's car and shipping the car to Detroit, to reduce the risk of a traffic stop. On April 4, Lusha picked up between $20,000 and $30,000 in cash from Garcia and delivered it to Shkambi and Dokaj. That cash, ob-

1. This evidence is summarized in the light most favorable to the verdict, as on a challenge to the sufficiency of the evidence, we must "accept[ ] all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict." *United States v. Moreno–Gonzalez*, 662 F.3d 369, 372 (5th Cir.2011) (internal quotation marks omitted).

2. Shkambi used similar coded language in calls intercepted in early 2008 in the Dallas area.

3. The co-defendants met at a pizzeria owned by Lusha.

tained by Garcia through the sale of marijuana on behalf of Shkambi, Lusha, and Dokaj, was to be used to purchase the cocaine. On April 10, Lusha informed Shkambi that the cocaine was ready; Shkambi assured Lusha that he had the money to pay for it. On April 12, after meeting to count the money, Lusha and Dokaj took delivery of eight kilograms of cocaine from Garcia. The cocaine was ultimately transported to Canada.

In May 2008, Shkambi and Lusha met with Jacinto to discuss purchasing cocaine and shipping it from the United States or Mexico to Europe—where they could sell the cocaine for a higher price. In July 2008, Lusha and Jacinto traveled to Chicago to meet with several co-defendants to discuss suppliers for cocaine that could be shipped from Texas to Chicago. During that meeting, Lusha discussed the events of the prior few months, explaining that they (including Shkambi) had brought approximately 100 pounds of marijuana into Texas, and that they had obtained at least eight kilograms of cocaine.

At some point in mid–2008, Shkambi traveled from the United States to Albania. On September 6, 2008, Albanian authorities conducting surveillance observed Shkambi deliver a package to two other individuals. Inside that package were eight individually-wrapped packages of heroin, weighing a total of four kilograms. Shkambi's fingerprints were on several of those packages. Shkambi was arrested and convicted in Albania for the "manufacturing and sale of narcotics in conspiracy." He was incarcerated in Albania for three years.[4]

Shkambi was arrested upon reentering the United States in 2012.

## B. Procedural Background

On October 15, 2009, Shkambi—along with eight co-defendants—was charged by indictment for one count of participating in a conspiracy to possess with intent to distribute cocaine, heroin, marijuana, or Ecstasy, in violation of 21 U.S.C. §§ 841 and 846 (Count One).

Prior to trial, Shkambi filed a motion in limine challenging the admission of his Albanian conviction. The court granted the motion in part and denied it in part, deeming the conviction itself inadmissible, but concluding that the acts underlying the conviction could be admitted—as that conduct was either intrinsic to the crime or, alternatively, admissible under Federal Rule of Evidence 404(b) as probative of Shkambi's intent to participate in the conspiracy. Immediately prior to trial, however, the court held a hearing concerning the Albanian judicial system, after which it ruled that the conviction too was admissible to show intent, as there was adequate evidence that the Albanian justice system was sufficiently trustworthy.

Shkambi's jury trial, which lasted five days, commenced on October 7, 2013. After the Government rested its case, Shkambi moved for a judgment of acquittal; the district court denied the motion. Shkambi presented one witness in his defense, after which he failed to renew his motion for a judgment of acquittal. On October 11, 2013, the jury convicted Shkambi on Count One. In a special verdict, the jury unanimously found beyond a reasonable doubt that the conspiracy involved: five kilograms or more of a mixture or substance containing a detectable amount of cocaine; one kilogram or more of a mixture or substance containing a

---

4. According to testimony at trial, high quality heroin is produced in Europe near Albania, and it would be profitable to sell such heroin to raise money to invest in cocaine—which is not produced in Europe and thus can be sold for a higher price there.

detectable amount of heroin; fifty kilograms or more but less than 100 kilograms of a mixture or substance containing a detectable amount of marijuana; and a mixture or substance containing a detectable amount of Ecstasy.

The presentence report ("PSR") calculated Shkambi's base offense level to be 36, his total offense level to be 40, and his criminal history category to be I—thus yielding an advisory Guidelines range of 292–365 months' imprisonment. Shkambi objected to the PSR and moved for a downward departure based on, *inter alia,* a then-pending amendment to the Guidelines which generally reduces the sentencing ranges for drug offenses by two levels. The district court overruled the objections and denied the motion, as the amendment had yet to become effective. The court ultimately sentenced Shkambi to 324 months' imprisonment, specifically noting that it had reduced the sentence by 36 months to give Shkambi credit for his time served for the Albanian conviction.

## II. Discussion

Shkambi challenges both his conviction and sentence on various grounds, contending that: (1) Shkambi's conduct with respect to the heroin distribution in Albania did not violate 21 U.S.C. §§ 841 or 846; (2) the district court abused its discretion in admitting evidence of Shkambi's Albanian conviction; (3) Shkambi's conduct with respect to the cocaine distribution did not violate 21 U.S.C. §§ 841 or 846; (4) there

was insufficient evidence to support the Ecstasy object of the conspiracy; and (5) Shkambi's sentence should be reduced based on the retroactive application of U.S. Sentencing Guidelines Manual § 2D1.1(c).[5]

### A. The Cocaine Object of the Conspiracy

We begin by addressing issue three, our resolution of which impacts our analysis with respect to several of the other issues raised in this appeal. Shkambi asserts that the cocaine-related evidence adduced at trial shows, at most, that he conspired to possess cocaine with the intent to distribute it in Canada and Europe (and not in the United States). Such conduct, Shkambi contends, does not violate the statutes for which he was convicted, as those statutes do not indicate on their face an intent to apply extraterritorially.[6]

We review this issue, which Shkambi did not raise before the district court, for plain error. *United States v. Hughes,* 726 F.3d 656, 659 (5th Cir.2013). But under any standard, Shkambi's argument is foreclosed by our precedent. Regardless of the ultimate intended destination for the cocaine at issue, the evidence at trial made clear that Shkambi possessed it (and with respect to the cocaine transactions that were not consummated, intended to possess it) within the United States. And in *United States v. Ojebode,* 957 F.2d 1218, 1225 (5th Cir.1992), this court unequivocally held that, for purposes of 21 U.S.C. §§ 841 and 846, "mere possession

---

5. Shkambi additionally argues that the district court erred, at sentencing, in holding Shkambi responsible for the heroin, cocaine, and Ecstasy-related conduct. Because this argument is premised on the substantive arguments Shkambi raises with respect to issues one through four, we do not address this argument separately.

6. 21 U.S.C. § 841(a)(1) renders it a crime "for any person knowingly or intentionally ... to ... possess with intent to manufacture, distribute, or dispense, a controlled substance." Under 21 U.S.C. § 846, "[a]ny person who attempts or conspires to commit" such an offense "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

of the drug in the United States is sufficient to supply the territorial nexus with the United States regardless of where distribution may have been intended." In that case, the defendant, who possessed heroin within the United States (en route to Mexico), similarly argued that his conviction could not stand because those statutes require "an intent to distribute narcotics within the United States." *Id.* Our court rejected that argument, based in part on "Congress's interest in prohibiting possession of drugs in the United States with intent to distribute outside the United States." *Id.* at 1226. We are bound by this decision under our rule of orderliness, as "one panel of this court cannot overrule the decision of another panel." *United States v. Darrington,* 351 F.3d 632, 634 (5th Cir.2003). Moreover, this holding is in line with those of our sister circuits. *See, e.g., United States v. Benbow,* 539 F.3d 1327, 1331 (11th Cir.2008) ("[21 U.S.C. §§ 841 and 846 are] violated by possession of cocaine in this country even where the intent is to distribute it outside this country."); *United States v. Holler,* 411 F.3d 1061, 1065 (9th Cir.2005) ("Where, as here, the criminal acts are committed in the United States, the fact that the defendant intends to distribute contraband outside of the United States does not divest this court of jurisdiction."); *United States v. McKenzie,* 818 F.2d 115, 118 (1st Cir.1987) ("Although appellant did not, apparently, intend to distribute the narcotics in the United States, the *place* of intended distribution is not important so long as such intent is established together

with the fact of possession within the United States."); *United States v. Muench,* 694 F.2d 28, 33 (2d Cir.1982) ("The actual possession on United States territory supplies the jurisdictional nexus and obviates the need for proof of intent to distribute within the United States.").

Although Shkambi asserts that this case is controlled by our earlier decision in *United States v. Baker,* 609 F.2d 134 (5th Cir.1980), that case is readily distinguishable. There, we addressed the application of these statutes on the high seas; in particular, we considered "whether the possession with intent to distribute statute reaches beyond the three-mile limit of the 'territorial sea,' into the so-called 'contiguous zone,' between three miles and twelve miles from the coast, an area sometimes described as the 'marginal sea.'" *Id.* at 136 (internal citation omitted). We held that the statute applied under the facts of that case, given the defendant's "intent to distribute marijuana within United States boundaries." *Id.* at 138. But that case did not resolve, as *Ojebode* did, whether the *possession of drugs within the United States,* absent an intent to distribute in the United States, is sufficient to establish the territorial nexus under 21 U.S.C. §§ 841 and 846. *See Holler,* 411 F.3d at 1065 (distinguishing *Baker,* in which "the fact that the defendants intended to distribute contraband in the United States was only relevant insofar as it supplied a jurisdictional nexus that might have otherwise been lacking" due to the defendant's possession of drugs outside of the United States); *Muench,* 694 F.2d at 33 (same).[7]

---

7. Shkambi also contends that *United States v. Lawrence,* 727 F.3d 386, 392 n. 3 (5th Cir. 2013), "implicitly holds" that 21 U.S.C. §§ 841 and 846 do not apply to the cocaine-related conduct at issue here. In that case, however, we merely noted the Eleventh Circuit's conclusion that Congress did not expressly state that 21 U.S.C. §§ 841 and 846

apply extraterritorially. *See id.* (citing *United States v. Lopez–Vanegas,* 493 F.3d 1305, 1313 (11th Cir.2007)). *Lopez–Vanegas* involved a situation distinguishable from the one here, as "the object of the conspiracy" in that case, "was *to possess controlled substances outside the United States* with the intent to distribute outside the United States." *Lopez–Vanegas,*

Accordingly, under our precedent, Shkambi's cocaine-related conduct falls within the purview of the statutes of conviction. Shkambi therefore has failed to establish any error as to this issue—much less an error that was "clear and obvious." *Hughes*, 726 F.3d at 659.

## B. The Remaining Objects of the Conspiracy

Shkambi does not dispute that the cocaine object of the conspiracy, along with the marijuana object (which he does not challenge on appeal), are together sufficient to support both his conviction and the length of his sentence.[8] But Shkambi contends that the admission of evidence relating to the heroin object of the conspiracy—conduct which, Shkambi argues, is not prohibited by the statutes of conviction—violated his right to due process and "thereby taint[ed] the entire trial."

We need not address Shkambi's argument that the heroin-related evidence, which arguably showed that Shkambi intended to possess *and* distribute heroin entirely outside of the boundaries of the United States, constitutes conduct not prohibited by 21 U.S.C. §§ 841 and 846. Nor need we address the Government's conten-

tion, disputed by Shkambi, that this issue was not properly raised below and thus is subject to plain error review. Under any standard, our precedent is clear that the "spillover from invalid claims" may "be a basis for granting a new trial" only where, "[a]t a minimum," the defendant has shown that he has suffered "prejudice as a result of the joinder of the invalid claims, i.e., that otherwise inadmissible evidence was admitted to prove the invalid ... claim[ ]." *United States v. Edwards*, 303 F.3d 606, 639–40 (5th Cir.2002). Thus, "*Edwards* requires the defendant [to] demonstrate both that the evidence was inadmissible and that it was prejudicial." *United States v. Arledge*, 553 F.3d 881, 896 (5th Cir.2008) (internal quotation marks and brackets omitted); *see also United States v. Cross*, 308 F.3d 308, 317 (3d Cir.2002) (concluding that this spillover analysis requires consideration of: "(1) whether the jury heard evidence that would have been inadmissible at a trial limited to the remaining valid count (*i.e.*, 'spillover' evidence); and (2) if there was any spillover evidence, whether it was prejudicial (*i.e.*, whether it affected adversely the verdict on the remaining count)"). Shkambi fails on both prongs.

---

493 F.3d at 1313 (emphasis added). That court explicitly distinguished cases like the one at hand in which there is "some other nexus to the United States [that] allowed for extraterritorial application," such as where "defendants either possessed or conspired to possess controlled substances within the United States." *Id.* at 1312. In any event, given the rule of orderliness, the panel in *Lawrence* could not have overruled our binding decision in *Ojebode*. *See Darrington*, 351 F.3d at 634.

8. With respect to the conviction, the Government need only prove one object of the conspiracy. *See United States v. Mauskar*, 557 F.3d 219, 229 (5th Cir.2009) ("[T]he government need have proved only one object of the conspiracy for us to sustain his conviction...."). As for the sentence, the total drug

amount attributed to Shkambi for the purpose of sentencing was 21,555.79 kilograms of marijuana. Based on this amount, Shkambi was assigned a base offense level of 36—which applies to offenses involving at least 10,000 kilograms but less than 30,000 kilograms of marijuana. *See* U.S. Sentencing Guidelines Manual § 2D1.1(c) (2013). Shkambi was held accountable for 55.79 kilograms of marijuana, as well as 85 kilograms of cocaine—the latter of which, for the purposes of sentencing, is equivalent to 17,000 kilograms of marijuana. *See* U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.8 (2013). Thus, even ignoring the Ecstasy and heroin quantities for which Shkambi was held responsible, he would have received a base offense level of 36.

### 1. Admissibility

▪ First, even assuming the invalidity of the heroin object of the conspiracy, the heroin evidence would have been admissible with respect to the remaining objects. The district court deemed Shkambi's Albanian heroin conviction, as well as the evidence underlying it, admissible under Rule 404(b) as probative of Shkambi's intent to enter into the conspiracy.[9] That ruling does not constitute an abuse of discretion. *See United States v. Girod,* 646 F.3d 304, 318 (5th Cir.2011) ("We review a district court's evidentiary rulings for abuse of discretion, subject to harmless-error analysis." (internal quotation marks omitted)). Although "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character," such evidence "may be admissible" to prove "intent." Fed. R.Evid. 404(b). Our analysis under Rule 404(b) requires application of a two-part test: "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978) (en banc).

▪ By pleading not guilty, Shkambi put his intent at issue. *United States v. Heard,* 709 F.3d 413, 430 (5th Cir.2013) ("[I]n a conspiracy case, the defendant puts his intent into issue when he pleads not guilty."). The fact that Shkambi possessed heroin in Albania with the intent to distribute it is highly probative of his willingness—i.e., his intent—to enter into a conspiracy to do the same with other drugs in the United States. *Cf. United States v. Wallace,* 759 F.3d 486, 494 (5th Cir.2014) ("A prior conviction for narcotics possession or manufacture is probative to a defendant's intent when he is charged with conspiracy to distribute."); *Heard,* 709 F.3d at 430 (admitting evidence under Rule 404(b), reasoning that "it is more likely that Lambert intended to further the objective of defrauding the United States out of employment taxes when he was, at the same time, defrauding the United States out of income tax through a fraudulent bankruptcy"); *United States v. Booker,* 334 F.3d 406, 411–12 (5th Cir. 2003) (concluding that evidence of the defendant's possession of a large amount of marijuana after his indictment was admissible as to his opportunity and intent to provide the cocaine in the charged conspiracy). As for the second *Beechum* prong, the district court did not abuse its discretion in concluding that the probative value of this evidence is not substantially outweighed by undue prejudice, especially given the overwhelming remaining evidence supporting Shkambi's conviction.[10]

---

9. The district court separately concluded that the heroin-related evidence is admissible as intrinsic to the conspiracy. *See United States v. Rice,* 607 F.3d 133, 141 (5th Cir.2010) ("Intrinsic evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place, and to evaluate all of the circumstances under which the defendant acted." (internal citations and quotation marks omitted)). This ruling is supported by evidence in the record showing that Shkambi intended to distribute heroin to raise money for his broader scheme to purchase cocaine and ship it to Europe. However-

er, given our conclusion below that this evidence is admissible under Rule 404(b), we need not decide whether such evidence is "inextricably intertwined" with the other objects of the conspiracy. *Id.* (internal quotation marks omitted).

10. Although the district court did not issue a limiting instruction on this point, *cf. Booker,* 334 F.3d at 412, Shkambi did not request such an instruction. Moreover, given the fact that the jury was required to fill out a special verdict form indicating their unanimous conclusions as to each of the separate objects of

See United States v. Pruett, 681 F.3d 232, 245 (5th Cir.2012) (per curiam) (concluding that Beechum's second prong was satisfied and reasoning that "[a]lthough the evidence of uncharged conduct was substantial, it did not overwhelm the charged conduct"); Wallace, 759 F.3d at 494 ("[T]he probative value of evidence related to a defendant's prior drug-related activity is not substantially outweighed by unfair prejudice in a drug conspiracy case.").

■ Shkambi separately argues that evidence of the Albanian heroin conviction is itself inadmissible due to purported inadequacies in the Albanian criminal justice system. The district court did not abuse its discretion in rejecting this argument. Generally, "foreign convictions stand on the same footing as domestic proceedings provided that the procedural protections necessary for fundamental fairness are observed by the foreign jurisdiction." United States v. Rodarte, 596 F.2d 141, 146 (5th Cir.1979) (per curiam) (citing United States v. Wilson, 556 F.2d 1177, 1178 (4th Cir.1977)). It is the defendant's burden to establish a lack of fundamental fairness by raising "specific allegations of procedural deficiencies" in the foreign proceedings. Id.

Shkambi has failed to meet this burden. Shkambi relied below on a 2006 internet report criticizing the Albanian criminal justice system—a report deemed untrustworthy by the district court. Meanwhile, the Government adduced, through the testimony of an Albanian prosecutor, substantial evidence as to the procedural protections offered defendants in the Albanian criminal justice system, inter alia: the requirement of probable cause for an arrest warrant (which is reviewed by a judge), the right to two defense counsel (provided by the government, if the defendant cannot afford them), notice of the charges and evidence against the defendant, the right to remain silent, the right to present evidence, and the right to a trial before a panel of five qualified judges.

Nonetheless, Shkambi's central complaint is that the Albanian system does not require proof beyond a reasonable doubt to sustain a conviction. Shkambi, however, has failed to support that contention. He points to Article 388 of the Criminal Procedural Code of the Republic of Albania, which delineates six circumstances in which a court "shall render a decision of acquittal"—but that provision does not delineate a burden of proof. The evidence put on by the Government, although somewhat unclear as to this point, tends to show that the Albanian system requires a burden of proof at least similar to the "beyond a reasonable doubt" standard. For example, the Albanian prosecutor testified that: the prosecution has the burden of proof at trial, defendants are presumed innocent until proven guilty, all convictions must be based on evidence rather than opinions, and prosecutors may not bring formal charges before concluding that "it is possible to prove [the charges] beyond any doubt." In any event, despite the centrality of the reasonable doubt standard to our own criminal justice system, the decision of another country not to adopt an identical standard does not instantly render its system "fundamentally unfair." Cf. Wilson, 556 F.2d at 1178 ("A jury trial for serious offenses is essential to fundamental fairness in trials conducted in this country under the Anglo–American system of justice. But a jury trial is not

the conspiracy, it is unlikely that the jurors improperly considered the heroin evidence

with respect to those other objects.

essential for fairness in every system of justice." (internal citation omitted)). Thus, because Shkambi has failed to meet his burden to show a lack of fundamental fairness, the district court did not abuse its discretion in admitting this evidence.[11]

### 2. Prejudice

■ Furthermore, even assuming the inadmissibility of the heroin-related evidence, Shkambi cannot satisfy the prejudice prong of the *Edwards* test. As noted above, the special verdict form required the jurors to make separate findings—unanimously, and beyond a reasonable doubt—with respect to each of the separate objects of the conspiracy. We must assume that the jurors followed these instructions, independently analyzing the evidence relevant to each object. *See United States v. Bernegger*, 661 F.3d 232, 237 (5th Cir.2011) (per curiam) (concluding that instructions requiring jurors to separately consider each count and the evidence pertaining to each count "are sufficient to cure any prejudice from the joinder of defen-

dants or offenses"); *United States v. Hamilton*, 334 F.3d 170, 183 (2d Cir.2003) ("[W]here the record indicates that the jury was able to distinguish between counts or between defendants, and to assess separately the evidence pertinent to each, we have found no basis for concluding that a new trial was warranted because of prejudicial spillover."). Moreover, the Government presented a mountain of highly probative evidence—including wiretaps containing Shkambi's own admissions, testimony from a confidential informant and from co-defendants directly implicating Shkambi, photographs of drugs, evidence of money transfers, and voluminous testimony from law enforcement—with respect to the cocaine and marijuana objects of the conspiracy. We have little difficulty concluding that, absent introduction of the heroin-related evidence, the jury would have reached the same conclusions as to those separate objects of the conspiracy. Thus, Shkambi has failed to "demonstrate prejudice from the introduction of the evidence" relating to the heroin object of the conspiracy. *Arledge*, 553 F.3d at 896.[12]

---

11. Despite the admission of this evidence, Shkambi was able to bring out evidence regarding the Albanian criminal justice system, and its differences from our own, via cross-examination.

12. Shkambi's reliance on *United States v. Adkinson*, 135 F.3d 1363 (11th Cir.1998), is misplaced. That case involved "a unique set of circumstances," concerning a complex conspiracy to defraud the United States. *Id.* at 1372; *see id.* at 1372 n. 24 ("We can find no other case in which such a sequence of events occurred."). The Eleventh Circuit reversed the convictions of the defendants on due process grounds, as one of the counts in the indictment was premised in part on allegations that the Government admitted did not state an offense under then-controlling law. *Id.* at 1365–69. The district court failed to dismiss the invalid count until after a five-month trial, which involved "17,500 pages of testimony and 1447 documents." *Id.* at 1372.

This case, which pales in comparison to *Adkinson* in terms of size and complexity, is readily distinguishable. First, as discussed above, the heroin-related evidence is relevant to Shkambi's intent to commit the other objects of the conspiracy. *Cf. id.* (noting that the evidence relating to the invalid allegations was "relevant only tangentially, if at all, to the ultimately charged scheme"). Moreover, there was substantial evidence regarding the other objects of the conspiracy tying Shkambi to his co-defendants. *Cf. id.* at 1374 ("The only way all of these defendants were tied together at all in this far-flung series of events was by the [invalid allegations]."). Finally, there is no contention in this case that the Government alleged the heroin object of the conspiracy in bad faith. *Cf. id.* at 1375 ("This is bad faith joinder and was seriously prejudicial to these defendants.").

Accordingly, the admission of this evidence does not warrant reversal of either Shkambi's conviction or sentence.[13]

## C. Amendment to the Sentencing Guidelines

Finally, Shkambi argues for a reduction in his sentence pursuant to a post-sentencing amendment to § 2D1.1(c) of the Sentencing Guidelines. However, as the Government correctly notes, this issue must first be addressed by the district court upon a motion by Shkambi under 18 U.S.C. § 3582(c)(2). *See United States v. Posada–Rios*, 158 F.3d 832, 880 (5th Cir. 1998) ("Whether to reduce a sentence based on a subsequent change in the sentencing guidelines rests with the sound discretion of the district court and the proper mechanism for reviewing such a claim is a motion brought under 18 U.S.C. § 3582(c)(2).").

## III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**13.** We need not address Shkambi's argument that there was insufficient evidence as to the Ecstasy object of the conspiracy. As discussed above, both Shkambi's conviction and sentence are supported by the cocaine and marijuana-related evidence. Moreover, Shkambi does not argue, as he does with respect to the heroin object of the conspiracy, that the Ecstasy-related evidence tainted the other objects of the conspiracy.