**UNITED STATES of America,**
**Appellee,**

v.

**Raul CONTRERAS, Defendant-Appellant.**

**No. 878, Docket 71–1108.**

United States Court of Appeals,
Second Circuit.

Argued April 2, 1971.

Decided July 7, 1971.

Harold F. McGuire, Jr., Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., for the Southern District of New York and Charles B. Updike, Asst. U. S. Atty., of counsel), for appellee.

George Sheinberg, Brooklyn, N. Y. (Robert Straus, Brooklyn, N. Y., of counsel), for defendant-appellant.

Before FRIENDLY, Chief Judge, and FEINBERG and MANSFIELD, Circuit Judges.

PER CURIAM:

Raul Contreras appeals from his conviction, after a jury trial in the District Court for the Southern District of New York, on two counts of violation of the narcotics and internal revenue laws. Count 1 charged him with receiving, concealing, and facilitating the transportation and sale of 690 grams of cocaine hydrochloride, knowing it to have been illegally imported, in violation of 21 U. S.C. § 174. Count 2 charged him with distributing the cocaine other than in or from the original stamped package, in violation of 26 U.S.C. § 4704(a). He received the mandatory minimum sentence of 5 years on each count, these to run concurrently.

The facts developed at the trial were as follows: Contreras, who owned a luncheonette on Manhattan's West Side, had been under irregular government surveillance for some weeks when a tip was received that a cocaine transfer was about to take place at his establishment. A government agent, posing as a customer, overheard a conversation between Contreras and one of his employees, indicating that the "material" was in a brown paper bag on a table at the rear of the restaurant. The agent soon left and summoned some of his cohorts who returned to the luncheonette in a group. At their approach, Contreras darted from behind the counter and attempted to reach the bag but was subdued before he could do so. The bag was later found to contain 690 grams of cocaine hydrochloride, 17.7% pure, in three separate "baggies."

At an interview prior to arraignment and after receiving *Miranda* warnings, Contreras sought to explain these events as follows: The paper bag had been brought to the restaurant by two men, one of whom he had known for eight years as the "tobacco man." The package was to be picked up within an hour by a third individual who was supposed to ask for the "tobacco." For permitting the use of his luncheonette in this fashion, Contreras was to receive an unspecified sum of money, which on six or seven past occasions had varied from $50 to $200. Finally, when asked what was in the paper bag, Contreras replied that it could be heroin, cocaine, or marijuana.

On appeal, Contreras complains of the trial court's instructions which (1) permitted the jury to draw the inference that the cocaine was illegally imported and that Contreras knew this to be so from the fact of his unexplained possession of the drug, and (2) permitted the jury to infer that he had distributed or dispensed the cocaine other than in or from the original stamped package from the fact that he had been in possession of cocaine without an appropriate tax stamp affixed to its container. The instructions were given prior to the Supreme Court's decision in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), and Con-

treras asserts that his convictions rest on statutory inferences which *Turner* held to be invalid as respects cocaine.

■ So far as the instructions on count 1 are concerned, our recent opinions in United States v. Gonzalez, 442 F.2d 698 (1971), and United States v. Vargas, 443 F.2d 901 (1971) sustaining application of the statutory presumption as applied to large quantities of cocaine, leave Contreras with a rather difficult case to make. It is true that the amount of cocaine involved in this case, 690 grams, 17.7% pure, was less than what had been at issue in *Gonzalez* or *Vargas*. And the trial judge here did not instruct that the inference allowed by the statute was limited to large quantities of cocaine. See United States v. Gonzales, *supra*, 442 F2d at 709 n. 10. However, as in *Vargas*, we note that the amount which Contreras was found to have possessed here was very much larger than the amount involved in *Turner*, 14.68 grams, 5% pure. Moreover, Contreras did not object to the instructions, and in view of *Gonzalez* and *Vargas* and the known pendency of the issue with respect to the validity of the "presumption" at the time of trial and the concurrent sentences, we are not disposed to notice this as a case of "plain error," F.R.Cr.P. 52(b).

■ With regard to the charge on count 2, Contreras points to our decision in United States v. Shay, 426 F.2d 287 (1970), as dictating reversal. While the amounts of pure cocaine involved in both cases are on a par, the jury instruction in *Shay* made more of the statutory presumption than did the comparable instruction in the instant case. The jury in *Shay* was told that knowing possession of narcotics other than in stamped packages was "sufficient for conviction" unless satisfactorily explained, 426 F.2d at 288. By contrast, the jury in *Contreras* was informed that if they found such possession they might infer the purchase, sale, or distribution condemned by the statute. "You are not required to draw this inference, but you may do so * * *." In addition, the defendant in *Shay* had excepted to the judge's instructions, while Contreras let the instructions on count 2 as well as those on count 1 pass without objection. Hence, on appeal Shay was not limited to an assertion of plain error as Contreras is here.

Moreover, the facts of this case fall quite neatly into the characterization which the *Turner* Court applied in upholding the § 4704(a) conviction as respects heroin. Here, as with the heroin in *Turner*, the only evidence of a § 4704(a) violation involved Contreras' possession of the drug. And the evidence of possession was of such a nature that in finding Contreras to have possessed the cocaine, the jury necessarily found that he was in the process of distributing it. Obviously, Contreras would not have left his personal supply of cocaine exposed in a paper bag on a table in his luncheonette, and he made no claim that the cocaine was intended for his own use. The evidence showed that to the extent Contreras had possession at all of the paper bag, as the jury found he did, he was controlling it until a third party arrived to retrieve it. For Contreras to be found in possession of the cocaine, then, the jury had to find that he was engaged in its distribution other than from the original stamped package. His own statements prior to arraignment constituted an admission that he was knowingly allowing his restaurant to be used in the distribution of whatever was contained in the bag, a substance which he conceded could have been heroin, cocaine, or marijuana. Thus, as with the heroin in *Turner*, Contreras' possession of cocaine constituted "an act of * * * distributing" cocaine, Turner v. United States, *supra*, 396 U.S. at 423, 90 S.Ct. 642 and "the instruction on the presumption is beside the point, since even if invalid, it was harmless error." *Id*. at 421, 90 S.Ct. at 654.

Affirmed.

FEINBERG, Circuit Judge (concurring):

I concur in the result, in view of the controlling authority of our *en banc* decision in United States v. Gonzalez, 442 F.2d 698 (2d Cir. 1971) from which I dissented.