# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 4, 2019         Decided April 23, 2019

No. 17-3060

UNITED STATES OF AMERICA,
APPELLEE

v.

ORAL GEORGE THOMPSON, ALSO KNOWN AS CHAD,
APPELLANT

Consolidated with 17-3061

Appeals from the United States District Court
for the District of Columbia
(No. 1:12-cr-00266-3)
(No. 1:12-cr-00266-2)

*Steven R. Kiersh*, appointed by the court, argued the cause and filed the briefs for appellant Oral George Thompson.

*Matthew B. Kaplan*, appointed by the court, argued the cause and filed the briefs for appellant Dwight Knowles.

*Dwight Warren Knowles*, *pro se*, filed the briefs for appellant.

*Michael A. Rotker*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Arthur G. Wyatt*, Chief, and *Charles A. Miracle*, Assistant Deputy Chief.

Before: GARLAND, *Chief Judge*, MILLETT, *Circuit Judge*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

Opinion concurring in part and concurring in the judgment in part filed by *Circuit Judge* MILLETT.

SILBERMAN, *Senior Circuit Judge*: Appellants Oral Thompson and Dwight Knowles appeal their convictions for conspiracy to distribute and possess with intent to distribute cocaine (5 kilograms or more) on an aircraft registered in the United States or owned by a United States citizen. Neither stepped foot in the United States, and they argue that the conspiracy crime does not have an extraterritorial reach. We conclude that Appellants are correct – at least with respect to conspiracy to *possess* with intent to distribute because the underlying crime is not extraterritorial. But an appraisal of the evidence indicates the error is harmless.

We also reject Appellants' challenges to the district court's evidentiary rulings and remand to the district court for an evidentiary hearing on an ineffective assistance of counsel claim.

**I.**

We first encounter Appellants' argument that the conspiracy crime – without regard to the substantive crimes upon which the

conspiracy is based – is not extraterritorial. The conspiracy provision states: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 963.

Appellants brandish the long-held presumption that United States crimes do not have extraterritorial reach unless Congress provides a "clear indication" that such is intended. *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010). And it is correct that Congress did not specifically state that this conspiracy provision was extraterritorial. However, the conspiracy language and the substantive offenses were included in the same statute dealing with a common subject matter, the import and export of drugs. Although in a recent case dealing with a charge of conspiracy to commit piracy, we regarded the general federal conspiracy statute – not related to the subject of piracy – as lacking an adequate indication of extraterritoriality, *United States v. Ali*, 718 F.3d 929, 935-36 (D.C. Cir. 2013), in a subsequent case, we reiterated *Ali*'s recognition that "[g]enerally, the extraterritorial reach of [the] ancillary offense . . . is coterminous with that of the underlying criminal statute." *United States v. Ballestas*, 795 F.3d 138, 144 (D.C. Cir. 2015) (alterations in original) (quoting *Ali*, 718 F.3d at 939).

In *Ballestas*, we distinguished *Ali*'s treatment of conspiracy to commit piracy by emphasizing that a conspiracy to distribute drugs on board a United States vessel was in the same act, dealing with the same subject, as the underlying offense, which undeniably was extraterritorial. That was sufficient indication that Congress intended the conspiracy offense to be extraterritorial as well. The same analysis applies here – at least with respect to one of the substantive offenses.

Now, we turn to the extraterritoriality of the substantive offenses in our case. The statute, in which Congress focused, *inter alia*, on drug crimes in connection with airplanes, states: "It shall be unlawful for any United States citizen on board any aircraft, or any person on board an aircraft owned by a United States citizen or registered in the United States, to – (1) manufacture or distribute a controlled substance or listed chemical; or (2) possess a controlled substance or listed chemical with intent to distribute." 21 U.S.C. § 959(b).[1] Congress explicitly addressed the extraterritorial reach of these crimes in the very next provision, § 959(c): "Acts committed outside territorial jurisdiction of United States . . . [.] This section is intended to reach acts of *manufacture* or *distribution* committed outside the territorial jurisdiction of the United States." (emphasis added).

Here is the anomaly. Distribution and manufacture clearly have extraterritorial reach, so therefore a conspiracy to engage in either, according to our precedent, is extraterritorial as well. But the omission of the third crime, possession with intent to distribute, from the extraterritoriality provision could not be a more striking illustration of the interpretive maxim *expressio unius est exclusio alterius*. It certainly appears that Congress did not intend possession with intent to distribute to be extraterritorial.

To be sure, two of our sister circuits, in *United States v. Lawrence*, 727 F.3d 386 (5th Cir. 2013) and *United States v. Epskamp*, 832 F.3d 154 (2d Cir. 2016), and our district court, in a previous opinion, *United States v. Bodye*, 172 F. Supp. 3d 15 (D.D.C. 2016), concluded that, notwithstanding the language of the statute, Congress could not have intended to treat possession

---

[1] Although 21 U.S.C. § 959 has been updated, we use the version in effect from October 13, 1996, to May 15, 2016.

with intent to distribute only domestically. The distinction in § 959(c) is attributed to inadvertence or poor drafting (the possession provision was placed in the statute later) because our fellow judges could not imagine any reason for the separate treatment of possession. All three courts emphasized that possession with intent to distribute domestically was already illegal.[2]

The government reiterates reasoning drawn from these opinions. It attempts to create ambiguity where, in our view, none exists. The government argues that the words "acts of" before "manufacture or distribution" in § 959(c) suggest an intent to include in the word "acts" "possession with intent to distribute" because possession is an act antecedent to distribution. We think that is an unlikely reading – that the "acts" of distribution would include myriad preceding acts. It is also asserted that the words "[t]his section" at the beginning of § 959(c) somehow imply that the whole section is extraterritorial. That is even less likely. As to the claim of superfluousness, we have previously said "[u]nlike two provisions within a single statute, we need not construe separate statutes to avoid redundancy." *Bennett v. Islamic Republic of Iran*, 618 F.3d 19, 23 (D.C. Cir. 2010).[3]

---

[2] *Epskamp* and *Bodye* referred to 21 U.S.C. § 841(a), which makes illegal possession with intent to distribute. *Epskamp*, 832 F.3d at 164-65; *Bodye*, 172 F. Supp. 3d at 19-20. *Lawrence* referred to 21 U.S.C. § 955, which addresses possession on an aircraft. *Lawrence*, 727 F.3d at 393.

[3] While both § 841 and § 959 were enacted as part of the same package of legislation and revised at the same time, the former is located within the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, while the latter is found within the Controlled Substances Import and Export Act, 21 U.S.C. §§ 951 *et seq*. In any event, as the Supreme Court has recognized, "instances of surplusage are not

Finally, it is claimed that the venue wording supports the government's interpretation. That sentence of § 959(c) states: "Any person who violates this section shall be tried in the United States district court at the point of entry *where such person enters the United States,* or in the United States District Court for the District of Columbia*.*" (emphasis added)*.* The reference to a district court "at the point of entry" certainly suggests extraterritoriality. But a reasonable reading of the sentence is that the point of entry and District of Columbia references apply only to the two extraterritorial crimes in the immediately preceding sentence, while the general federal venue rule and statute (Fed. R. Crim. P. 18; 18 U.S.C. § 3237) continue to apply to possession with intent to distribute – just as they continue to apply to manufacture and distribution when those crimes are committed domestically. This understanding may, at first glance, seem to be in tension with some of the wording. As the concurrence notes, the provision does refer to "this section," which includes possession. But since the venue provision initially applied only to manufacture and distribution, it seems a reasonable reading of the statute that the venue sentence applies only to those extraterritorial crimes – and possession was not included because it can be tried in the relevant domestic location. *See* 21 U.S.C. § 959 (1970).

We simply do not understand our colleague's concern that our interpretation of the venue provision is not "workable." She is troubled about a scenario in which possession with intent to distribute would be tried separately from distribution. Conc. Op. at 8. But she overlooks the crux of our opinion. In our view, the conspiracy to possess with intent to distribute charge at issue here is not a crime at all (because the acts charged occurred

unknown." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 299 n.1 (2006).

extraterritorially). Therefore, we do not see a problem in this case.

Nor do we see a serious hypothetical problem under our reading of the statute. The venue provision, as we understand it, applies to manufacture and distribution committed abroad, the subject matter of the immediately preceding sentence. This special venue provision is necessary for extraterritorial crimes. But, as we noted, the statute makes manufacture and distribution in connection with aircraft a domestic offense as well. Obviously, in that event, the venue would be dictated by the general venue statute. Bear in mind § 959(c) does not say, as our colleague apparently believes it does: "This section is intended to reach *only* acts . . . committed outside the territorial jurisdiction of the United States. Any person who violates this section shall *only* be tried in the United States district court at the point of entry where such person enters the United States, or in the United States District Court for the District of Columbia.*"*

We think an alternative understanding of venue might be based on the language of the general venue provision, which applies "[e]xcept as otherwise expressly provided by enactment of Congress." 18 U.S.C. § 3237. The Fifth Circuit has held that the language of the venue provision here, despite the use of seemingly mandatory "shall," does not explicitly establish exclusivity. *United States v. Zabaneh*, 837 F.2d 1249, 1256 (5th Cir. 1988).

In any event, we conclude that it is unlikely that congressional draftsmen would draft a provision explicitly providing for extraterritoriality only with respect to acts of manufacture and distribution, strikingly omitting the crime of possession with intent to distribute, yet somehow intending extraterritoriality to apply to all three acts. We do not think we can discount plain congressional language as somehow

inadvertent or mistaken – particularly when we are dealing with the interpretation of a criminal statute where the doctrine of lenity is required even if the statute is ambiguous.[4]  *See, e.g.*, *United States v. Bass*, 404 U.S. 336, 348 (1971) ("[W]here there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.").

In the end, the issue before us is not what congressional intent might lurk unexpressed in the statute, nor how a reasonable draftsman focusing on drug crimes in connection with airplanes – with thorough knowledge of the U.S. Code – would have fashioned the section.  Rather, as we have indicated above, we must apply the long-held presumption against extraterritoriality, which the Supreme Court has described as follows:

> Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application.  The question is not whether we think "Congress would have wanted" a statute to apply to foreign conduct "if it had thought of the situation before the court," but whether Congress has affirmatively and unmistakably instructed that the statute will do so. "When a statute gives no clear indication of an extraterritorial application, it has none."

---

[4] The Supreme Court, many years ago in the case of *Holy Trinity Church v. United States*, 143 U.S. 457 (1892), said, "the act, although within the letter, is not within the intention of the legislature, and therefore cannot be within the statute," *id*. at 472, but that approach appears to have been abandoned, *see, e.g.*, *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009).

*RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2100 (2016) (citations omitted) (quoting *Morrison*, 561 U.S. at 255, 261).

Our colleague's reasoning, to be sure, does demonstrate that the statute's drafting was somewhat inartful, but she has absolutely no explanation why Congress would have deliberately excluded possession from § 959(c). That is why the presumption carries the day. Because § 959 "gives no clear indication of an extraterritorial application" for possession with intent to distribute, we must conclude that "it has none."

We determine, therefore, that the charge of conspiracy to possess with intent to distribute was defective. Appellants argue that under these circumstances, their convictions must be reversed because it is impossible to determine whether the jury's verdict was based on a conspiracy to distribute or to possess with intent to distribute. The difficulty with Appellants' argument is that it is quite challenging to imagine any evidence that would be probative of a conspiracy to possess with intent to distribute that would not also be evidence of a conspiracy to distribute. Indeed, when counsel for Appellant Knowles was asked at oral argument for even one example of evidence in the case that was directed to conspiracy to possess with intent to distribute but not to conspiracy to distribute, he could not respond. Since no possible prejudice could have arisen from the asserted error, we conclude the error was harmless.[5] *See Skilling*

---

[5] The Government argues that we should apply plain error review because Appellants' counsel, despite having raised these precise arguments in a pre-trial motion to dismiss the indictment, did not object on those same grounds to the jury instructions. We need not decide whether Appellants' pre-trial motion was sufficient to preserve their argument because we conclude, in any event, the error was harmless.

10

*v. United States*, 561 U.S. 358, 414 (2010); *Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008); *Pope v. Illinois*, 481 U.S. 497, 501-02 (1987); *see also Neder v. United States*, 527 U.S. 1, 9-10 (1999).

## II.

As we noted, Appellants also claim the district court abused its discretion in admitting certain evidence. Most notably, Thompson contends that evidence of his involvement in drug transactions, extrinsic to the charged conspiracy – to use U.S. registered planes from in or about May 2011 to December 12, 2012 – was admitted contrary to Rule 404(b) of the Federal Rules of Evidence. That provision, as is well known, prohibits the use of evidence of another act – not the crime charged – to prove a person's bad character. The district court admitted evidence that Thompson was involved in drug transactions in the 1990's; that Thompson had a conversation in June 2011 regarding a possible purchase of cocaine; that in May 2011, Thompson had conversations about a shipment of cocaine from Venezuela to Honduras (not involving a U.S. registered plane); and that in May 2012, Thompson had a conversation with another member of the conspiracy regarding a sale of cocaine to a third person Thompson knew.

In evaluating the district court's decisions, both in response to the government's motion *in limine* and its charge to the jury, we must bear in mind that the court was careful to instruct the jury properly that it could not base conviction on other than indicted conduct. But 404(b) permits, as the district court instructed the jury, the use of evidence of drug shipments or transactions using non-aircraft means to show the similarity of prior crimes, a common plan or scheme, or to show defendant's *knowledge* of drug transactions and purpose.

To be sure, even if prior bad act evidence falls within the categories permitted by 404(b), it must not be unfairly prejudicial under Rule 403. But, in our view, the admission of most of this evidence was easily within the district court's discretion. We see one difficulty, however. We have held that when evidence of prior bad acts is introduced to show defendant's knowledge of the type of transactions, it cannot be stale, s*ee United States v. Sheffield*, 832 F.3d 296, 307-08 (D.C. Cir. 2016), and the evidence from the 1990's does seem stale.[6] We think, however, that, given all the other evidence in the case, if admission of that testimony to show knowledge was erroneous, it was harmless.

Both Appellants also object to the testimony of two members of the conspiracy (Matthew Ferguson and Anton Johnson). That testimony explained to the jury the meaning of code words used in recorded evidence. Appellants assert that the witnesses should have been qualified as experts, but we have previously held that so long as members of the conspiracy testify based on their own participation in the conspiracy (not necessarily participation in a particular conversation), such witnesses do not have to be qualified as experts. *See United States v. Wilson*, 605 F.3d 985, 1025-26 (D.C. Cir. 2010). We do note, however, that Anton Johnson's testimony, at some points, does seem more like that of an expert than a lay witness. The government asked him about his expertise in drug transactions generally, including the technicalities and jargon of drug trafficking. Unfortunately for Appellants, they never objected to Johnson's testimony, so therefore we review it for plain error, which requires prejudice. That is impossible to

---

[6] Had the district court instructed the jury that evidence of the 1990's transactions could be considered as evidence of when and how members of the conspiracy met, it might have been admissible.

show since Johnson's testimony covered virtually the same ground as Ferguson's.[7]

## III.

Thompson raises several arguments claiming ineffective assistance of counsel: failure to move for severance of Defendants based on the introduction of potentially prejudicial testimony against Knowles; failure to move to sever Defendants based upon disparity of the evidence; failure to move to dismiss the indictment based upon a variance between the indictment and the specific offense for which Defendant was charged; and failure to move for a mistrial when the government elicited testimony from Anton Johnson that he was engaged in human trafficking. Our general practice is to remand to the district court unless we find the claims not to be colorable.

We think none of these claims are colorable except one. We remand to the district court the question of whether it was ineffective assistance of counsel for Thompson's counsel to fail to move to sever the claims of Thompson and Knowles in light of potentially prejudicial evidence introduced at trial.

## IV.

For the foregoing reasons, we affirm the judgments of the district court and remand with instructions to hold an evidentiary hearing related to Appellant Thompson's claim of ineffective assistance of counsel as consistent with this opinion.

*So ordered.*

---

[7] We have considered the other evidentiary issues raised by Appellants and think they lack sufficient merit to discuss.

MILLETT, *Circuit Judge*, concurring in part and concurring in the judgment in part: While we end up in the same place, the majority opinion and I get there by different routes. Specifically, I am troubled by the path the majority opinion cuts through extraterritoriality analysis because the textual indicia of extraterritoriality are far stronger than the majority opinion indicates. And all of the other federal circuit courts to have addressed the question have ruled the opposite of the majority opinion here.

Because creating a circuit conflict is unnecessary to the resolution of this case, I would simply affirm—as the court ultimately does—on the ground that any error in charging the extraterritorial possession conspiracy would be harmless. That is because the evidence that proved the possession conspiracy was fully coextensive with proof of the concededly extraterritorial distribution conspiracy, 21 U.S.C. § 959(b) (2012). *See* Maj. Op. at 9–10.

As relevant here, Section 959(b)(1) of Title 21 prohibits the manufacture or distribution of controlled substances by any person on board an aircraft that is registered in the United States or owned by a United States citizen. Section 959(b)(2) outlaws possession with the intent to distribute under the same circumstances. The extraterritoriality of Section 959(b)(1)'s prohibition on manufacture or distribution is undisputed. It is the extraterritorial status—or not—of Section 959(b)(2)'s offense of possession with the intent to distribute that is in question here.

The majority opinion rightly recognizes that a statute will not have extraterritorial reach unless "Congress has affirmatively and unmistakably instructed that the statute will do so." *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2100 (2016); *see Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255, 261 (2010). That textual inquiry, like all exercises in statutory construction, must read the statute as

a functioning whole. *See EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 255 (1991), *superseded by* Civil Rights Act of 1991, Pub. L. No. 102–166, § 109(a), 105 Stat. 1071.

Here is what the statute says in that regard:

**(a) Manufacture or distribution for purpose of unlawful importation**

It shall be unlawful for any person to manufacture or distribute a controlled substance in schedule I or II or flunitrazepam or listed chemical—

(1) intending that such substance or chemical will be unlawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United States; or

(2) knowing that such substance or chemical will be unlawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United States.

**(b) Possession, manufacture, or distribution by person on board aircraft**

It shall be unlawful for any United States citizen on board any aircraft, or any person on board an aircraft owned by a United States citizen or registered in the United States, to—

(1) manufacture or distribute a controlled substance or listed chemical; or

> > (2) possess a controlled substance or listed chemical with intent to distribute.
>
> **(c) Acts committed outside territorial jurisdiction of United States; venue**
>
> > This section is intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States. Any person who violates this section shall be tried in the United States district court at the point of entry where such person enters the United States, or in the United States District Court for the District of Columbia.

21 U.S.C. § 959.

Helpfully, Section 959(c)'s opening sentence announces its extraterritorial scope: "This section is intended to reach acts of manufacture or distribution *committed outside the territorial jurisdiction of the United States*." 21 U.S.C. § 959(c) (emphasis added). That broad and explicit language expressly confirms that "[t]his section"—all of Section 959—has extraterritorial reach. *Cf. Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60–62 (2004) ("this subparagraph" means the entire subparagraph). In so doing, the extraterritoriality provision plainly encompasses not only the importation offenses outlined in Section 959(a), but also any acts of manufacture or distribution in Section 959(b). No surprise there, since Section 959 is one part of an entire Subchapter devoted to the "[i]mport and [e]xport" of controlled substances that regulates from beginning to end the cross-border and transnational movement of drugs. 21 U.S.C. ch. 13, subch. II.

The majority opinion, fairly enough, points out that Section 959(c)'s key language refers to "acts of manufacture or distribution," not possession. From that, the majority opinion concludes that Congress made Section 959(b)(1)'s prohibition on manufacture and distribution extraterritorial, while excluding Section 959(b)(2)'s possession with intent to distribute offense. Maj. Op. at 4. In so doing, the majority opinion relies on a rule of negative implication known as *expressio unius est exclusio alterius*: "expressing one item of [an] associated group or series excludes another left unmentioned." *Chevron USA Inc. v. Echazabal*, 536 U.S. 73, 80 (2003) (quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002)).

That rule "is fine when it applies," but this case does not seem to fit the bill. *Chevron*, 536 U.S. at 80. Congress did not frame its extraterritoriality statement in the same terms as Section 959(b)(1), which makes it unlawful to "manufacture or distribute." Instead, Congress declared that all "acts of" manufacture or distribution identified in "[t]his section" have extraterritorial operation. 21 U.S.C. § 959(c). Because Section 959(b)(2) reaches only those acts of possession undertaken "with [the] *intent to distribute*," that conduct naturally qualifies as an "act[] of" distribution within the meaning of the extraterritoriality clause. 21 U.S.C. § 959(b)(2), (c) (emphasis added); *see United States v. Contreras*, 446 F.2d 940, 942 (2d Cir. 1971) (holding that "possession of cocaine constituted 'an act of * * * distributing' cocaine" where a jury necessarily found that possession was part of the "process of distributing" the drug) (quoting *Turner v. United States*, 396 U.S. 398, 423 (1970)); *cf.* United States Sentencing Guidelines Manual § 2G2.2 cmt. n.1 (U.S. Sentencing Comm'n 1987) (defining "distribution" of child pornography to include "possession with intent to distribute").

The proof of that proposition is in the pudding. As the majority opinion notes, "it is quite challenging to imagine any evidence that would be probative of a conspiracy to possess with intent to distribute that would not also be evidence of a conspiracy to distribute." Maj. Op. at 9. The evidentiary delta is vanishingly thin precisely because possession with the intent to distribute is an "act[] of" distribution. 21 U.S.C. § 959(c).

The majority opinion brushes off Section 959(c)'s "acts of" language. Maj. Op. at 5. But a cardinal rule of statutory construction is that courts should not discard duly enacted statutory text as meaningless verbiage. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be construed so that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks omitted omitted). And if Congress had wanted to confine Section 959's extraterritorial reach to the manufacture or distribution of controlled substances, it could easily have said that "~~This section~~ Sections 959(a) and 959(b)(1) ~~is~~ are intended to reach ~~acts of manufacture or distribution committed~~ outside the territorial jurisdiction of the United States." Or "[t]his section is intended to reach ~~acts of~~ manufacture or distribution ~~committed~~ outside the territorial jurisdiction of the United States." Either way, the majority opinion leaves the "acts of" phrase with "no job to do[.]" *Doe v. Chao*, 540 U.S. 614, 623 (2004).

The difference matters. When every word of the extraterritoriality clause is accounted for and given its natural reach, that clause's statement as to "[t]his section['s]" scope operates to explain, rather than to constrain, Section 959's breadth (as the majority opinion does). In other words, Section 959(c) is best read as doing exactly what the Supreme Court requires: The statute affirmatively and explicitly declares that

the "acts of distribution" outlawed by "[t]his section"—which includes possession with the intent to distribute—are prohibited outside the United States (assuming the required nexus to a United States aircraft).

Two more rules of statutory construction reinforce that reading.

*First*, just as courts should not discard statutory language as wasted words, they surely should not construe an entire statutory provision as an empty gesture. *See TRW*, 534 U.S. at 31. If, as the majority opinion would have it, Section 959(b)(2) simply proscribes domestic possession with the intent to distribute, it accomplishes nothing. Section 841, enacted and amended alongside Section 959 as part of the same legislation, already outlaws domestic possession with the intent to distribute controlled substances, whether or not on an airplane. 21 U.S.C. § 841(a); *cf. United States v. Ray*, 250 F.3d 596 (8th Cir. 2001) (affirming 21 U.S.C. §§ 841 and 846 conviction for conspiracy to possess with the intent to distribute marijuana on board domestic aircraft).[1] And federal law already imposes the same penalties—in fact, even more severe for certain recidivists—as attach to Section 959(b)(2). *Compare* 21 U.S.C. § 841(b), *with id.* § 960(b)(1) (same, except not including the enhancement for third felony drug offenses

---

[1] *See* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, §§ 401 and 1009, 84 Stat. 1236 (enacting both Section 841 and Section 959); Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, §§ 1002–1003, and 3161, 100 Stat. 3207 (amending Section 959 to include Section 959(b) and also amending Section 841's penalty provision, Section 841(b)). Because Sections 959 and 841 were enacted and amended as part of the same legislation, the majority opinion's reliance on *Bennett v. Islamic Republic of Iran*, 618 F.3d 19, 23 (D.C. Cir. 2010), is misplaced.

provided by 21 U.S.C. § 841(b)); *see also id.* §§ 841(b) and 960(b)(1) (2012).

More to the point, if Congress had wanted to reduplicatively outlaw and punish exclusively *domestic* conduct that it had already outlawed and punished, the last thing it would do is bury that new purely domestic prohibition within a wholly *extraterritorial* statute, tie it to another *extraterritorial* provision, and make it part of an extraterritorial "section" that captures all extraterritorial "acts of" distribution, 21 U.S.C. § 959(c). *See United States v. Epskamp*, 832 F.3d 154, 166 (2d Cir. 2016) ("It is impossible to discern any possible reason as to why Congress, if it actually intended § 959(b)(2) to apply solely to domestic conduct, elected to place such a provision within an existing statute that was expressly and wholly extraterritorial in nature, coupled with another new subsection—§ 959(b)(1)—that was likewise intended to apply extraterritorially.").

*Second*, an elemental rule of statutory construction is to "[r]ead on." *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 36 (2012). Section 959(c)'s statement about the intended extraterritorial reach of "[t]his section" does not stop with that declaration. Its next sentence provides that "[a]ny person who violates this section shall be tried" in the federal district court "at the point of entry where such person enters the United States," or "in the United States District Court for the District of Columbia." 21 U.S.C. § 959(c).[2] Mandating that venue for the prosecution of "[a]ny person" who violates "this

---

[2] The sentence reads, in full: "Any person who violates this section shall be tried in the United States district court at the point of entry where such person enters the United States, or in the United States District Court for the District of Columbia." 21 U.S.C. § 959(c). A recent amendment of Section 959 eliminated the venue provision. *See id.* § 959(d) (2017).

section" "shall" be "at the point of entry where such person enters the United States" necessarily presupposes extraterritorial offenses. Allowing venue alternatively in the District of Columbia as the seat of the federal government— and nowhere else—is consistent with that extraterritorial reach.

The majority opinion suggests that the venue provision refers back only to the extraterritorial manufacture and distribution crimes. Maj. Op. at 6–7. But that is not what Section 959(c) says. The preceding sentence refers to "acts of" manufacture or distribution, and the venue provision expressly applies to "[a]ny person" who violates "this section"—any part of it. *Cf. Koons Buick*, 543 U.S. at 60–62. Read as a whole, that naturally captures the possession with intent to distribute offense as well.

And it has to include the possession offense to be workable. As this case illustrates, possession with the intent to distribute and distribution are commonly charged together, and the evidentiary proof may overlap extensively if not entirely (as it does in this case). Yet Congress surely did not intend its mandatory venue provision to force the government in a case under Section 959 to prosecute its distribution charge in one district court, and its possession with intent to distribute charge in another. *See* 18 U.S.C. § 3237; Fed. R. Crim. P. 18; *United States v. Barrett*, 153 F. Supp. 3d 552, 561 n.7 (E.D.N.Y. 2015) ("Venue must be proper for a particular count before an analysis about joinder would be appropriate.") (citing Wayne R. LaFave et al., *Criminal Procedure* § 16.1(f) (3d ed. 2007)).

Given the unsavoriness of roping off the possession offense for distinct venue treatment, the majority opinion proposes as a "reasonable reading" of the statute that the court carve all three of Section 959(b)'s offenses—manufacture, distribution, and possession—out of the venue provision

"when those crimes are committed domestically." Maj. Op. at 6. But I am not at all sure what statutory text the majority opinion is "reading" when it takes that tack. Section 959(c) could not be clearer: "Any person who violates *this section*" "*shall* be" tried in accordance with Section 959(c)'s venue provision. There is nothing ambiguous or caveated about that. Nor is there any textual hook for bifurcating Section 959(c)'s singular and comprehensive venue provision into two very different venue assignments. As strong as it is, the presumption against extraterritoriality is supposed to be a tool for construing, not emending, statutory text.

\* \* \* \* \*

All of that is a long way of saying that the arguments in favor of extraterritoriality are, in my view, quite strong. Which presumably is why the two other circuits to have addressed this question have held that Section 959(b)(2)'s possession with intent to distribute offense applies extraterritorially. *Epskamp*, 832 F.3d at 162; *United States v. Lawrence*, 727 F.3d 386, 391–395 (5th Cir. 2013).

In my view, we need not and should not create an inter-circuit conflict in this case. That is because, for the reasons the majority opinion elsewhere explains (Maj. Op. at 9–10), Thompson and Knowles' convictions stand regardless. The error (if any) in charging the extraterritorial possession with intent to distribute conspiracy was harmless because the evidence of that conspiracy was entirely coextensive with the proof of a conspiracy to distribute, which was also charged in this case and falls within the jury's general verdict. *See United States v. Powell*, 334 F.3d 42, 45 (D.C. Cir. 2003).

For those reasons, I join Part II of the majority opinion in full, but as to Part I, I respectfully concur in the judgment only.